# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| WASHINGTON INTERNATIONAL § <br> INSURANCE COMPANY § <br> § <br> v. § <br> § <br> RON W. KEENEY and CAROLYN E. § <br> KEENEY § | Civil Action No. 4:19-CV-00632 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Ron W. Keeney and Carolyn E. Keeney's Motion to Abstain or Dismiss (Dkt. #5). Having considered the motion and the relevant pleadings, the Court finds that Defendants' motion should be denied.

## BACKGROUND

This case arises from a construction surety agreement dispute. In this suit, Plaintiff Washington International Insurance Company alleges that Defendants breached the parties' indemnity agreement after a botched construction project. To better understand the nature of the issues set forth in Defendants' motion, the Court describes the events leading up to this lawsuit.

On August 9, 2011, Hunt Construction Group, Inc. ("Hunt") entered into a construction contract with Denton County (Dkt. #8, Exhibit 4 at p. 3). Hunt agreed to be the general contractor for the Administration Complex Phase II construction project (the "Project") (Dkt. #8, Exhibit 4 at p. 3).

In order to qualify for a subcontract on the Project, Five Star Services, Inc. d/b/a Five Star Roofing ("Five Star") and Defendants entered into a General Indemnity Agreement (the "GIA") in favor of Plaintiff (Dkt. #8, Exhibit 2). The GIA set forth the terms regarding, in relevant part, indemnity and collateral security. Under the GIA's indemnity provision, Five Star and Defendants

agreed that they would indemnify Plaintiff against any liability or costs that Plaintiff incurred as a result of a party's claim under a bond guaranteed by Plaintiff (Dkt. #8, Exhibit 2 at p. 1). The GIA also described the terms of collateral security; it provided that, in the event of a lawsuit against Plaintiff, Defendants were required to post addition collateral with Plaintiff upon its request. Specifically, in ¶ 3 of the GIA, Defendants agreed that:

> If [Plaintiff] receives any claim or lawsuit asserting liability, or sets up a reserve to cover any liability, claim asserted, suit or judgement under any such bond, [Defendants] will immediately upon demand . . . deposit with [Plaintiff] a sum of money equal to such claim or reserve and any increase thereof as collateral security on such bond, and such sum and any other money or property . . . in the discretion of [Plaintiff], as collateral security on all bonds . . . .

(Dkt. #8, Exhibit 2 at p. 1).

After the bidding process, Hunt issued a subcontract to Five Star. Under the subcontract with Hunt, Five Star was responsible for the Project's roof work and was required to indemnify Hunt if any claims arose out of Five Star's work (Dkt. #8, Exhibit 3 at pp. 2–3). Additionally, Plaintiff issued a subcontract performance bond to Five Star (Dkt. #8, Exhibit 4 at p. 3). Under the bond, Plaintiff, as surety, guaranteed to Hunt, as obligee, that Five Star, as principal, would act in accordance with the subcontract (Dkt. #8, Exhibit 2). Thus, the bond protected Hunt in the event that Five Star defaulted on its obligations under the subcontract (Dkt. #8, Exhibit 2).

After doing substantial work on the project, Hunt filed a lawsuit in the 367th District of Denton County on December 11, 2014 (Dkt. #8, Exhibit 3). Hunt claimed that Denton County did not pay Hunt for the work done on the Project (Dkt #8, Exhibit 3 at p. 2). Then, on March 30, 2015, Denton County filed a counterclaim against Hunt alleging that it breached the construction contract because of roof defects (Dkt. #8, Exhibit 3 at p. 2).

As Five Star's subcontract required it to indemnify Hunt on claims arising from its work, Hunt asked Five Star for indemnification against Denton County's counterclaims (Dkt. #8,

Exhibit 3 at p. 2). Five Star refused and, instead, intervened in the proceedings between Hunt and Denton County, seeking payment from Hunt for the roof work it completed (Dkt. #8, Exhibit 3 at pp. 2–3).

Hunt then presented Plaintiff with a claim under the subcontract performance bond for Five Star's default, but to no avail. So, on September 14, 2017, Hunt filed a third-party petition against Plaintiff in the state-court proceedings (Dkt. #8, Exhibit 3 at p. 3). Hunt sought to recover damages up to the penal amount of the bond from Plaintiff in the event that Hunt was found liable to Denton County for breach of the construction contract for the Project (Dkt. #8, Exhibit 3 at p. 3).

On November 2, 2017, Plaintiff filed a crossclaim against Five Star and a third-party petition against Defendants in the state-court proceedings (Dkt. #8, Exhibit 1; Dkt. #8, Exhibit 4). In those suits, Plaintiff sought indemnification from Five Star and Defendants—under the GIA—for defending against Hunt's claim (Dkt. #8, Exhibit 4 at p. 1).

After going to mediation, the parties filed a Joint Motion for Stay of Proceedings Due to Possible Settlement in the state-court case (Dkt. #8, Exhibit 1; Dkt. #8, Exhibit 5). The Denton County court granted the motion (Dkt. #8, Exhibit 6). Importantly, the court's order did not "prohibit any party from voluntarily dismissing its affirmative claims . . . during the pendency of the stay" (Dkt. #8, Exhibit 6).

In February of 2019, Plaintiff invoked ¶ 3 of the GIA, which allows Plaintiff to increase its collateral reserve after receiving any legal claim (Dkt. #1 at pp. 2–3). Due to the lawsuit from Hunt, Plaintiff asked Five Star and Defendants to increase its collateral reserve $55,715.50 in case of future loss and expenses (Dkt. #1 at p. 4). On April 17, 2019, Plaintiff sent a written demand to Five Star and Defendants for the deposit into the reserve in accordance with ¶ 3 of the GIA

(Dkt. #8, Exhibit 7 at p. 2). Five Star and Defendants rejected the demand on June 21, 2019 (Dkt. #8, Exhibit 8).

On August 22, 2019, after Five Star and Defendants refused to put up additional collateral, Plaintiff non-suited its claims against Five Star and Defendants for indemnification in the state-court proceedings (Dkt. #8, Exhibit 9 at p. 1). On August 30, 2019, Plaintiff filed its suit in this Court against Defendants for breach of the GIA (Dkt. #1). Plaintiff seeks both specific performance of the GIA's collateral deposit provision and monetary damages for Defendants' purported breach of the GIA's indemnity provision (Dkt. #1 at pp. 5–6).

On November 11, 2019, Defendants filed the present motion, asking the Court to abstain from exercising jurisdiction over Plaintiff's claims (Dkt. #5). On November 15, 2019, Plaintiff filed its response (Dkt. #8).

## LEGAL STANDARD

In determining whether to abstain from a case, the Court must first consider whether the state and federal claims are parallel. Claims are parallel when they "involv[e] the same parties and the same issues." *Brown v. Pacific Life. Ins. Co.*, 462 F.3d 384, 395 n.7 (5th Cir. 2006) (alteration in original) (citing *RepublicBank Dall., Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987)). It is not necessary that there be "a mincing insistence on [the] precise identity of parties and issues." *Id.* (internal quotation marks omitted) (citing *RepublicBank Dall., Nat. Ass'n*, 828 F.2d at 1121).

If the cases are parallel, the Court applies the *Colorado River* doctrine. Under the *Colorado River* doctrine, the Court may abstain from exercising jurisdiction over claims under "exceptional circumstances." *Id.* at 394. The following six factors indicate whether "exceptional circumstances" exist:

> (1) assumption by either state or federal court over a *res*; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Id*. at 395 (citing *Stewart v. W. Heritage Ins. Co*., 438 F.3d 488, 491 (5th Cir.2006)). The decision to abstain must be based on a careful balancing of important factors as they apply to a case, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* (internal quotation marks omitted) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 16 (1983)). The *Colorado River* test "should 'be applied in a pragmatic, flexible manner with a view to the realities of the case at hand.'" *Allen v. La. State Bd. of Dentistry*, 835 F.2d 100, 104 (5th Cir. 1988) (quoting *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 21).

## ANALYSIS

Defendants move for the Court to abstain from exercising jurisdiction over Plaintiff's claims based on the *Colorado River* doctrine. Defendants claim that the cases are parallel (Dkt. #5). And, even if the cases were not parallel, Defendants contend that the *Colorado River* factors support abstention (Dkt. #5). Plaintiff, however, asserts the opposite, arguing that the Court should not abstain because the cases are not parallel and because the *Colorado River* factors weigh against abstention (Dkt. #8).

The Court first addresses whether the state action and the federal action are parallel. Then, the Court considers the *Colorado River* factors, ultimately finding that abstention would not be appropriate.

**I.**  **Parallel Proceedings**

Under the *Colorado River* doctrine, a federal court may abstain from a case only if there is a parallel state case. *Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251

5

(5th Cir. 2005). A federal court with jurisdiction may, however, abstain if a parallel proceeding presents "extraordinary and narrow" circumstances. *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976)).

Proceedings are considered to be parallel if they "involv[e] the same parties and the same issues." *Brown*, 462 F.3d at 395 n.7 (quoting *RepublicBank Dall., Nat'l Ass'n v. McIntosh*, 828 F.3d 1120, 1121 (5th Cir. 1987)) (alteration in original). To be parallel cases, the identities of the proceedings' parties and issues need not be precisely the same. *See id.* (quoting *RepublicBank*, 828 F.3d at 1121). Rather, cases are parallel if they involve "'substantially the same parties' litigating 'substantially the same issues.'" *Alpert v. Riley*, 2011 WL 801978, at *12 (S.D. Tex. Dec. 10, 2011) (citing *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006); *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000); *Allen v. Bd. of Educ., United Sch. Dist. 436*, 68 F.3d 401, 402 (10th Cir. 1995)). As a guiding principle, courts ask "whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Id.* (citing *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005); *Rowley v. Wilson*, No. 05–30189, 2006 WL 2233221, at *1 (5th Cir. Aug. 4, 2006) (per curiam) (holding that suits were not parallel for *Colorado River* abstention purposes because some defendants that were in the federal case were not present in the state suit and because the plaintiff asserted claims against those defendants in the federal suit, which were not asserted in the state suit)). If there is any doubt regarding the parallel nature of the state-court suit, it "should be resolved in favor of exercising jurisdiction." *TruServ Corp.*, 419 F.3d at 592.

Defendants contend that "[t]here can be no doubt that these are parallel cases." (Dkt. #5 at p. 3). They briefly argue that the case in state court is similar to the one filed in this Court, although different relief is sought in each case (Dkt. #5). Defendants claim that, by non-suiting its claims

in state court, Plaintiff is using this Court to forum shop, establishing the "exceptional circumstances" as required by *Colorado River*.[1]

Plaintiff counters, arguing that no parallel claims exist because the state case and the federal case "involve different claims/issues (although they also involve different parties)" (Dkt. #8 at p. 1). The Court agrees; this case is not parallel to the state-court action because the parties and issues presented in the state-court and federal-court cases are not the same.

**A. The Parties**

To start, the parties in the state court are different than the parties in this case. *See Liverpool FC Am. Mktg. Grp., Inc. v. Red Slopes Soccer Found.*, No. 4:17-CV-00756, 2018 WL 2298388, at *4 (E.D. Tex. May 21, 2018) (finding that the suits are not parallel because "[w]hile some of the parties are the same . . . , some are not"). The parties in the state proceedings are Hunt, Denton County, Five Star, and Plaintiff. But, Defendants are not involved with the state-court proceedings because Plaintiff non-suited its state-court claim against Defendants.[2] The state-court case also contains parties that are missing in the federal action—i.e., Five Star, Denton County, and Hunt. Thus, the parties in the state-court proceedings are different than those in the federal proceedings.

---

[1] To the extent that Defendants argue that the Court should abstain because the exercise of its jurisdiction would promote forum shopping, the Court is not persuaded. "[C]onsiderations of forum shopping, although mentioned by the Supreme Court in a footnote in *Moses H. Cone*, are not recognized as a formal *Colorado River* factor." *Welding Techs. v. James Mach. Works, LLC*, No. 3:12-CV-00336, 2013 WL 1123852, at *6 n.2 (S.D. Tex. Mar. 18, 2013); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 35 n.20 (1983). Thus, while considerations of forum shopping may be relevant to the Court's analysis, the Court finds that these considerations would not affect the Court's decision that abstention is inappropriate. *See Welding Techs.*, 2013 WL 1123852, at *6 n.2; *see also* 17A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4247 (3d ed. 2007) (noting that some courts have considered forum shopping in the *Colorado River* analysis, but that courts may not "decline to exercise jurisdiction on the ground of forum shopping alone").

[2] Mr. Keeney is the president of Five Star; in the case before this Court, however, he is being sued in his individual capacity as an indemnitor for the bond.

### B. The Issues

Furthermore, the Court finds that even though the two lawsuits are based in part on the same basic factual allegations, "the issues are not exactly the same." *Id*. To determine whether the state-court and federal-court cases have the same issues, the Court must answer this "central question"—whether the issues in the federal suit would be resolved by a decision in the state suit. *SA Bay LLC v. Hall*, No. V-10-66, 2010 WL 5092973, at *3 (S.D. Tex. Dec. 7, 2010); *see also Alpert*, 2011 WL 801978, at *12 (citing *TruServ Corp.*, 419 F.3d at 592). Currently, Plaintiff is not pursuing any remaining claims in the state-court case.[3] Plaintiff's federal-court case, on the other hand, includes claims for indemnification from Defendants under the GIA and for specific performance by Defendants of the GIA's collateral security obligation. Therefore, the state action does not encompass Plaintiff's claims in federal court. *See Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251–52 (5th Cir. 2005) (holding that because the state action does not include some claims asserted in the federal action, the cases are not parallel). As there are no overlapping causes of action here, a decision in the state suit would not dispose of the claims before this Court. *SA Bay LLC*, 2010 WL 5092973, at *3; *Alpert v. Riley*, 2011 WL 801978, at *12. Accordingly, the Court finds that the state-court and federal-court cases are not parallel.

Because the Court finds that the cases are not parallel, the Court could stop here. But, out of an abundance of caution, the Court will further analyze whether abstention is appropriate under the *Colorado River* factors.

---

[3] Plaintiff initially sued Defendants in state court seeking indemnification under the GIA. But, the Court must determine "whether [the state-court proceeding], *as it currently exists*, is a parallel, state-court proceeding." *SA Bay LLC*, 2010 WL 5092973, at *3 (S.D. Tex. Dec. 7, 2010) (alteration in original) (emphasis in original) (citing *Boccard USA Corp. v. TigPro, Inc.*, No. H-07-0177, 2007 WL 1894154, at *6 (S.D. Tex. July 7, 2007)). Accordingly, because Plaintiff non-suited its claims in 2019, Plaintiff is currently not pursuing any remaining claims in the state-court case. *See id.* (determining whether the state-court and federal-court cases were parallel without considering the claims non-suited in state court).

## II. *Colorado River* Factors

Even if this case was parallel to the state proceedings, the Court finds that the *Colorado River* factors do not show that there are exceptional circumstances warranting abstention. In order to determine whether exceptional circumstances exist, the Court considers the following *Colorado River* factors: (1) the assumption of a *res*; (2) inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained; (5) extent federal law decides the merits; and (6) adequacy of state proceedings. *Brown*, 462 F.3d at 395. The Court addresses each factor in turn.

### A. Assumption by Either Court of Jurisdiction Over a *Res*

The Court finds—and the parties agree—that this case does not involve a *res*, or a tangible physical property. *Safety Nat'l Cas. Corp. v. Bristol-Myers Squibb Co.*, 43 F. Supp. 2d 713, 720 (E.D. Tex. 1999). Because there is not a *res* at issue in this case, this factor weighs against abstention. *Murphy v. Uncle Ben's Inc.*, 168 F.3d 734, 738 (5th Cir. 1999).

### B. Relative Inconvenience of the Fora

The Court next considers the inconvenience of the fora. "[W]hen courts are in the same geographic location, the inconvenience factor weighs against abstention." *James v. Nocona Gen. Hosp.*, No. 7:02-CV-0291-KA, 2006 WL 3008105, at *3 (N.D. Tex. Oct. 23, 2006). The state proceedings are in Denton County, Texas, which is within the Sherman Division of the Eastern District of Texas. Therefore, the inconvenience factor weighs against abstention. *See id.* (holding that the federal forum was convenient when the state court was located within the federal district court's division).

### C. The Avoidance of Piecemeal Litigation

The purpose of the *Colorado River* abstention doctrine is to avoid the danger of inconsistent rulings with respect to property. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 651 (5th Cir. 2000). "*Duplicative* litigation, wasteful though it may be, is a necessary cost of our nation's maintenance of two separate and distinct judicial systems." *Id.* at 650 (emphasis in original). There is no danger in this case for inconsistent rulings because, as discussed above, the issues in the state and federal proceedings are different. *See supra*, at 8. As such, this factor weighs against abstention.

### D. The Order in Which Jurisdiction was Obtained by the Concurrent Fora

"[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.* at 651 (alteration in original) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21). The Court must therefore look at how much progress of the action has been made in the case in state court compared to the one in this Court. Notably, "this factor will only favor abstention when the federal case has not proceeded past the filing of the complaint." *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 492 (5th Cir. 2006).

Here, the federal-court case *has* proceeded past the filing of the complaint. The Court has already issued the case's scheduling order, and the parties have already filed briefing on a pending summary judgment motion. This factor therefore weighs against abstention.

### E. Extent Federal Law Provides the Rules of Decision on Merits

This factor asks whether the case involves state-law claims or federal-law claims. *See Black Sea Inv., Ltd.*, 204 F.3d at 651. "[T]he absence of a federal-law issue does not counsel in favor of abstention." *Id.* (citation omitted). Moreover, the Court's task in determining this factor

is not to look at whether this claim could be tried in state court but, rather, to decide whether an exceptional circumstance exists for the Court to relinquish its jurisdiction. *Id*. Therefore, "the presence of state law issues weighs in favor of surrender only in rare circumstances." *Id*. (citation omitted). Plaintiff does not have a federal claim at issue in this Court, and the Court does not find that Defendants proved that exceptional circumstances exist for the Court to relinquish its jurisdiction. Accordingly, this factor is "at most neutral" in its application. *Id.*

### F. The Adequacy of the State Proceeding in Protecting the Rights of the Party Asserting Jurisdiction

Under this factor, the Court considers whether "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Murphy*, 168 F.3d at 739 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28). The Court must therefore determine whether the claim presented to it will be resolved at the completion of the state-court proceedings.

As discussed above, the state-court proceedings do not involve the same issues as those presented to the federal court. *See supra*, at 8. At the conclusion of the state proceedings then, this Court would still be faced with the determination of Plaintiff's claims for indemnity and specific performance of the collateral provision under the GIA. For this reason, the state-court proceedings are not adequate to resolve Plaintiff's claims, and this factor weighs against abstention.

### G. Balancing of Factors

It is appropriate for a federal court to abstain from exercising its jurisdiction only in "extraordinary and narrow" circumstances. *Colo. River Water Conservation Dist.*, 424 U.S. at 813. The Court uses the *Colorado River* factors not as a "mechanical checklist" but carefully balancing them "as they apply in a given case, with the balance heavily weighted in favor of the

exercise of jurisdiction." *Murphy*, 168 F.3d at 738 (internal quotation marks omitted) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16). While the Court acknowledges that one factor is neutral, five out of the six factors weigh against abstention. This case does not present the "extraordinary and narrow" circumstances, which warrant an abstention from jurisdiction. *See Brown*, 462 F.3d at 394–95. Defendants' motion is therefore denied.

## CONCLUSION

It is therefore **ORDERED** that Defendant Ron W. Keeney and Carolyn E. Keeney's Motion to Abstain or Dismiss (Dkt. #5) is hereby **DENIED**.

**SIGNED this 28th day of July, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE