# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| WASHINGTON INTERNATIONAL INSURANCE COMPANY, § § § | |
| *Plaintiff*, § | Civil Action No. 4:19-cv-00632 |
| § | Judge Mazzant |
| v. § § | |
| RON W. KEENEY and CAROLYN E. KEENEY, § § § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Summary Judgment (Dkt. #14). Having considered the motion and the relevant pleadings, the Court finds that Plaintiff's Motion for Summary Judgment should be **GRANTED**.

### BACKGROUND

This case arises from Defendants' purported breach of their indemnity contract with Plaintiff due to Defendants' refusal to make a deposit into a collateral account per Plaintiff's request.

Defendant Ron Keeney was President and sole owner of Five Star Services, Inc. d/b/a Five Star Roofing ("Five Star"). In August of 2011, Five Star entered into a written subcontract (the "Subcontract") with Hunt Construction Group, Inc. ("Hunt"). The Subcontract required Five Star to complete roofing work for Denton County, Texas (the "Project"). Hunt agreed to pay Five Star $1,045,400 for its work. The Subcontract required Five Star to obtain and provide to Hunt subcontract performance and payment bonds from a surety company licensed to do business in

Texas.  These bonds were required to guarantee and secure the performance of Five Star's obligations to Hunt under the Subcontract.

In January of 2012, Defendants, in their individual capacities, and Five Star entered into a General Indemnity Agreement (the "GIA") with Plaintiff.  The GIA allowed Five Star to qualify to bid and be awarded contracts on commercial construction projects.  In paragraph three of the GIA, Defendants agreed that:

> If [Plaintiff] receives any claim or lawsuit asserting liability, or sets up a reserve to cover any liability, claim asserted, suit or judgment under any such bond, [Defendants] will, immediately upon demand…deposit with [Plaintiff] a sum of money equal to such claim or reserve and any increase thereof as collateral security on such bond, and such sum and any other money or property…in the discretion of [Plaintiff], as collateral security on all bonds…

(Dkt. #8, Exhibit 1 at p. 1).  Pursuant to the GIA, Plaintiff issued a Subcontract Performance Bond (the "Bond") to allow Five Star to bid on and be awarded commercial contracts.

After completing substantial work on the Project, Hunt filed a lawsuit in the 367th Judicial District Court of Denton County, Texas.  Hunt's lawsuit alleged that Denton County did not pay for work done on the Project.  Denton County then filed a counterclaim against Hunt alleging that Hunt breached the construction contract because of roof defects.  After Denton County asserted its counterclaim against Hunt, Hunt sought indemnity from Five Star.[1]  Five Star refused, and Hunt declared Five Star in default.  Hunt subsequently sought compensation from Plaintiff under the Bond for Five Star's default up to the penal sum of the Bond if Hunt were found liable to Denton County for breach of contract.

Hunt filed a third-party petition in the state court proceeding against Plaintiff due to the roof defects and Five Star's refusal to indemnify it.  Plaintiff then filed a third-party petition action

---

[1] As in the GIA, the Subcontract between Hunt and Five Star required Five Star to defend, indemnify, and hold Hunt and Plaintiff harmless from any claims directly or indirectly related to Five Star's roof work.

2

against Defendants in the state court proceeding seeking indemnification from Hunt's claim. Plaintiff has incurred and paid expenses of at least $66,060.06 in defending itself against Hunt's claims as of the date of filing of suit in this Court.

The parties in the state court proceeding filed a Joint Motion for Stay of Proceedings Due to Possible Settlement, which did not seek to prevent a party from voluntarily dismissing its legal claims while in effect. The 367th Judicial District Court granted the motion. Accordingly, Plaintiff voluntarily dismissed its crossclaims against Five Star and Defendants without prejudice.

Due to the lawsuit with Hunt, Plaintiff invoked paragraph three of the GIA, which allows Plaintiff to increase its collateral reserve after receiving any legal claim (Dkt. #1 at pp. 2–3). Plaintiff asked Five Star and Defendants to increase its collateral reserve $55,315.50 to cover future loss and expenses. On April 17, 2019, Plaintiff sent a written demand to Five Star and Defendants for the deposit into the reserve in accordance with paragraph three of the GIA. Five Star and Defendants rejected the demand on June 21, 2019.

On August 30, 2019, Plaintiff filed its suit in this Court against Defendants for breach of the GIA (Dkt. #1). Plaintiff seeks specific performance of the collateral deposit provision and damages from Defendants' purported breach of the GIA's indemnity obligation. On May 11, 2020, Plaintiff filed the present Motion (Dkt. #14). On June 12, 2020, Defendants filed their Response (Dkt. #18). On June 18, 2020, Plaintiff filed its Reply (Dkt. #19).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440

(5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Plaintiff moves for summary judgment on two grounds. First, Plaintiff argues that the Court should order specific performance of the collateral deposit provision of the GIA. Second, Plaintiff argues that the Court should order indemnity by Defendants for expenses incurred and paid by it.

Defendants argue that awarding an award of specific performance greater than $1.1 million against two individuals is neither justified under the facts nor equitable justice. Additionally, Defendants argue that the indemnity obligation on the performance bond expired by its own terms and could not be extended by the unilateral actions of Plaintiff without the consent of Defendants.

### *Specific Performance*

Under Texas law, specific performance may be ordered by a court if: (1) the contract is reasonably certain, unambiguous, and based on valuable consideration; (2) the contract is fair in every section, void of misrepresentation, misapprehension, fraud, mistake, imposition, or surprise; (3) the parties are so situated that specific performance would not be harsh or oppressive; and (4) the party seeking specific performance must come into court with clean hands.

The collateral deposit provision, and the GIA more generally, is reasonably certain, unambiguous, and based on valuable consideration. Defendants entered into the GIA with Plaintiff to obtain surety bonds required under the Subcontract (Dkt. #14, Exhibit "C" at pp. 3-4). After the execution of the GIA, Plaintiff executed and issued the bonds to Defendants concerning the

5

Subcontract on the Project (Dkt. 14, Exhibit "C" at p. 4).  Importantly, Defendants do not argue that the GIA is uncertain or ambiguous; rather, Defendants argue that the amount Plaintiff seeks is neither justified nor equitable justice under the facts (Dkt. #18).  The collateral deposit provision clearly states that Defendants will "deposit with the Surety a sum of money equal to such claim or reserve" immediately upon demand and after the Plaintiff either received a claim or lawsuit or set up a reserve to cover any liability (Dkt. #14, Exhibit "A" at p. 7).

Defendants do not contend that the GIA and collateral deposit provision contain misrepresentations, misapprehensions, fraud, mistakes, impositions or surprises.  Further, Texas courts have "generally granted specific performance to enforce collateral security clauses based on the premise such remedy is required to protect the surety's bargain." *Liberty Mut. Ins. Co. v. Nat'l Pers. of Texas, Inc.*, No. 3:02-cv-1341, 2004 WL 583531, *2 (N.D. Tex. Mar. 24, 2004).  Nothing in the record suggests that the provision contained in the contract at issue in this case is distinguishable in any way from other collateral security clauses that courts have upheld.  Defendants do not offer any summary judgment evidence that suggests that the collateral deposit provision contained in the GIA is anything other than fair in every section.

The parties disagree as to whether specific performance would be harsh or oppressive to Defendants.  Plaintiff argues that the sum owed is merely what is required under the contract entered into by the parties. Defendants argue that requiring two individuals to deposit $1.1 million with Plaintiff would "financially ruin" their family. (Dkt. #18).

However, specific performance of a collateral deposit provision will not be considered harsh and oppressive merely by requiring Defendants to comply with the contract. *See Hartford Fire Ins. Co. v. 3i Construction, LLC*, No. 3:16-cv-00992-M, 2017 WL 3209522, *3 (N.D. Tex. May 18, 2017).  Defendants agreed to deposit a sum of money equal to a claim against Plaintiff or

reserve set up by Plaintiff to cover any liability, claim asserted, suit, or judgment under the Bond. (Dkt. #14, Exhibit "A" at p. 7).  In the present case, requiring Defendants to submit $1,100,715.50 to be held and utilized by Plaintiff as collateral security complies with the terms of the GIA that the Defendants voluntarily entered into with Plaintiff.  Additionally, the sum deposited would be merely held by Plaintiff until the underlying dispute is resolved and any unused funds would then revert back to Defendants.

Lastly, no summary judgment evidence exists that suggests that Plaintiff is coming into court with anything other than clean hands.  Defendants only assert that specific performance would be harsh or oppressive towards them.

Plaintiff has conclusively established each element required for specific performance of the collateral deposit provision of the GIA. Defendants entered into a reasonably clear and unambiguous contract with Plaintiff.  No misrepresentations, misapprehensions, fraud, mistakes, impositions, or surprises exist within the GIA and collateral deposit provision.  Specific performance of the collateral deposit provision would merely require Defendants to comply with the contract they entered into with Plaintiff. Defendants argue that they "deserve their day in court" to dispute whether the installed roofs "needed or need to be replaced in whole or in part" (Dkt. #18, p. 5).  However, requiring Defendants to deposit collateral does not prevent them from having that day in court.  The granting of specific performance merely requires Defendants to give Plaintiffs custody over collateral amounting to an amount contracted for by both Parties.  The requirement of mere compliance alone does not constitute harshness or oppression.  Lastly, no evidence supports a finding that Plaintiff came into this Court with unclean hands.

7

*Indemnity*

Plaintiff also seeks indemnity from Defendants for incurred and paid expenses in connection with claims made on the bonds issued by Plaintiff.

Texas law requires a party seeking indemnity to prove five elements: (1) a contractual indemnity agreement existed; (2) the agreement obligated the indemnitor to indemnify the indemnitee in the event claims were made on bonds issued; (3) claims were then made on bonds issued; (4) all conditions precedent for recovery had occurred, been performed, waived, or excused; and (5) the indemnitee has been damaged. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995).

The Parties do not dispute the existence of the indemnity agreement, the obligations arising under the indemnity agreement, the existence of a claim made on the issued bonds, or that the Plaintiff has incurred and paid expenses that would otherwise be subject to the indemnity agreement. Rather, the parties disagree about whether the indemnity obligation still exists once the performance bond expires.

Plaintiff argues that the performance bond itself was not a contract that expires or terminates by its express terms. Defendants, on the other hand, argue that the GIA covering all bonds applied for and executed should be considered terminated when the underlying bond is extinguished.

Defendants cite to Texas law for the proposition that "indemnity contracts that terminate by their express terms do not rise again." *Griffin Industries, Inc. v. Foodmaker, Inc.*, 22 S.W.3d 33, 36 (Tex.App.–Houston [14th Dist.] 2000, no pet.). By extension, Defendants assert that any indemnity agreement covering an extinct bond also terminates by its express terms. The Bond in the present case expired before the "expiration of twenty-five (25) months from the date on which

the right of action accrues" (Dkt. #14, Exhibit "A" p. 13). Therefore, according to Defendants, the GIA should also be regarded as expired.

Plaintiffs argue that the Bond itself, however, is not a contract subject to expiration by its express terms. Rather, Plaintiffs assert that the Bond is an instrument that simply guarantees the performance of contractual obligations in the Subcontract. Plaintiffs distinguish the *Griffin* case cited by Defendants by emphasizing that the contract itself in that case contained an express provision that terminated the obligations under the indemnity agreement. However, no such provision existed in the language of the present GIA.

The Subcontract Performance Bond states:

> Any suit under this bond must be instituted before the expiration of twenty-five (25) months from the date on which the right of action accrues, but if this provision is prohibited by law, then it shall be deemed to be amended so as to be equal to the minimum period of limitation allowed by law.

(Dkt. #14, Exhibit "A" p. 13). Plaintiffs contend that this clause operates as a contractual limitations provision rather than an express term by which the Bond, and subsequently the GIA, expires. The Court agrees. Parties may alter the four-year statute of limitations that typically governs contract cases by inserting a limitations provision into their agreement. *See Nance v. State Farm Fire and Casualty Co.*, No. 2:17-cv-00538-JRG, 2017 WL 7052146, *3 (E.D. Tex. Nov. 21, 2017). A provision limiting the statute of limitations may not create a limitations period shorter than two years, however. TEX. CIV. PRAC. & REM. CODE ANN. § 16.070 (West).

The last portion of the Bond clause clearly states: "if this provision is prohibited by law, then it shall be deemed to be amended so as to be equal to the minimum period of limitation allowed by law" (Dkt. #14, Exhibit "A" p. 13). This language indicates that the Parties were conscious of the minimum two-year requirement for the statute of limitations and that they attempted to follow the provisions of the Texas Civil Practices and Remedies Code. Therefore, the

Court finds that this provision is a contractual limitations clause and not an express provision that terminated obligations under the indemnity agreement.

Neither the GIA nor the Bond itself include language that supports Defendants' contention that the GIA should expire at the same time the Subcontract Performance Bond expires. Therefore, the GIA has not expired, and Plaintiff has conclusively established its right to indemnity under the agreement.

## CONCLUSION

As discussed above, Plaintiff conclusively established each element required for specific performance of the collateral deposit provision of the GIA. Additionally, Plaintiff conclusively established its right to indemnity under the GIA. It is therefore **ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. #14) is hereby **GRANTED.**

Defendants are ordered to deposit $1,100,715.50 with Plaintiff, within fourteen (14) days of this Order, to be used by Surety per the terms of the GIA.  Further, Defendants are ordered to indemnify and reimburse Plaintiff in the amount of $101,328.76 for expenses incurred and paid through May 6, 2020, within fourteen (14) days of this Order.

**SIGNED this 30th day of October, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE